## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DOUGLAS E. ROSENBERG, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) | |
| v. ) | Case No. 1:19-cv-10661-NMG |
| LOANDEPOT.COM, LLC, and JOHN DOE CORPORATION, ) ) ) | |
| Defendants. ) | |

## MEMORANDUM IN SUPPORT OF LOANDEPOT.COM, LLC'S MOTION TO DISMISS

## INTRODUCTION

Defendant loanDepot.com, LLC ("LoanDepot") files this Memorandum of Law in Support of its Federal Rule of Civil Procedure 12(b)(6) Motion to dismiss Plaintiff's Complaint for failure to state a claim on which relief can be granted. Plaintiff alleges that LoanDepot called his cellular telephone via an automated telephone dialing system ("ATDS") to market its products and services without his prior express consent in violation of the Telephone Consumer Protection Act ("TCPA"). Plaintiff's claims must, however, be dismissed because the TCPA is unconstitutional for three reasons.

First, the TCPA is an unconstitutional content-based restriction on speech. Plaintiff's putative class action, and others like it, have a substantial chilling effect on constitutionally protected speech. And the vehicle with which they bring such actions—the TCPA—discriminates based on the content of the speech. For example, the TCPA prohibits calls to collect private debt, but contains a blanket exemption for calls to collect government-backed debt. This discrimination occurs even when the public debt (e.g. federal student loans) and private debt (e.g. private student

loans) are virtually identical.  Additionally, although the TCPA prohibits calls to collect medical debt and service medical-related accounts, the Federal Communications Commission ("FCC") created an exception for other healthcare-related calls, texts, and messages.  Further, the TCPA also exempts calls made for certain emergency notifications from its coverage.

The statute thus contains myriad content-based provisions and exclusions that trigger strict scrutiny under the Supreme Court's 2015 decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015).  Indeed, a number of courts, including the Fourth Circuit, have recently found that Section 227(b)(1)(A)(iii) is a content-based restriction on speech that is subject to strict scrutiny under the First Amendment.  *See, e.g., Am. Ass'n of Political Consultants v. FCC*, 2019 U.S. App. LEXIS 12127 (4th Cir. Apr. 24, 2019) ("*AAPC*").  Likewise, the TCPA's call restrictions are also subject to strict scrutiny for the independent reason that they impose speaker-based preferences for government messages over private messages.  And, as the Fourth Circuit held last week, the TCPA does not come close to surviving strict scrutiny.  *Id.* at *20.

Second, the TCPA's content and speaker-based preferences violate the Equal Protection Clause for the same reasons.  Because they are not narrowly tailored to the government's interest, the differential treatment of certain speakers and their speech is unconstitutional.

Third, the TCPA's definition of an ATDS, compounded by the FCC's failure to provide adequate guidance, renders Section 227(b)(1)(A)(iii) unconstitutionally vague.

Contrary to the Fourth Circuit's decision in *AAPC*, the Court cannot remedy the TCPA's unconstitutionality by severing the unconstitutional exemptions.  The Fourth Circuit and other courts that have severed the unconstitutional provisions of the TCPA fail to appreciate the unique issues raised by First Amendment free speech cases that make severability particularly inappropriate.  In free speech cases like this one, severing results in restricting even more speech

and discourages constitutional challenges because those whose speech is banned do not benefit from the remedy. Thus, not surprisingly, when the Supreme Court has been confronted with ordinances or statutes that violate free speech, it has struck down the ordinances without even raising the possibility of severance. Otherwise, a court is left with the untoward task of restricting speech that congress plainly intended to permit.

Even if the TCPA is constitutional, however, Plaintiff's Complaint must still be dismissed for failure to state a claim on which relief can be granted. Count One fails as a matter of law because Plaintiff has not alleged any facts that show loanDepot or the John Doe Corporation called him via an automatic telephone dialing system ("ATDS"). Count Two fails as a matter of law because Plaintiff has not alleged that his cellular telephone is a residential telephone line, which is required to state a claim under the TCPA's do-not-call ("DNC") provisions. Plaintiff's allegation in Count Two that the John Doe Corporation failed to identify itself on telemarketing calls fails as a matter of law because, unlike other parts of the TCPA, that requirement does not have a private right of action. Finally, Plaintiff has not alleged facts that, if true, would render loanDepot liable for calls placed by the John Doe Corporation. Instead, similar to the ATDS allegation, Plaintiff relies on conclusory statements unadorned with actual facts.

## ARGUMENT

### A.    Federal Rule 12(b)(6) Standard.

To survive a motion to dismiss, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Further, Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed when it "has not nudged [the claims] . . . across the line from conceivable to plausible." *Id.* at 680 (internal quotation marks omitted). Plaintiff's Complaint fails

this standard.

**B.       The TCPA Is An Unconstitutional Restriction On Speech.**

**1.        The TCPA Discriminates Based On The Content Of The Speech.**

After the Supreme Court's landmark First Amendment decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), courts, including most recently the Fourth Circuit, have agreed that strict scrutiny applies to the TCPA because it is a content-based restriction on speech. *See, e.g.*, *Am. Ass'n of Political Consultants*, 2019 U.S. App. LEXIS 12127 at *20; *Gallion v. Charter Communications, Inc.*, 287 F. Supp. 3d 920, 924-26 (C.D. Cal. 2018), *appeal docketed* No. 18-55667 (9th Cir. May 23, 2018); *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036 (N.D. Cal. 2017); *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021 (N.D. Cal. 2017); *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1145 (D. Minn. 2017).

These decisions agree that the TCPA is content-based, but they understate the extent to which that is so. They focus on the fact that the TCPA exempts all calls made to collect government-backed debt—regardless of whether the caller is a government entity or a private debt collector—but applies to efforts to collect a private debt. *See Gallion*, 287 F. Supp. 3d at 924-26 (discussing the TCPA's discrimination between government-backed debt and private debt). But the text of the TCPA and the FCC's implementation of it contain additional content-based restrictions.

For example, the TCPA also exempts emergency calls. 47 U.S.C. § 227(b)(1)(A)(iii). The FCC created a further content-based exemption for calls related to "appointment and exam confirmations and reminders, wellness checkups, hospital pre-registration instructions, pre-operative instructions, lab results, post-discharge follow-up intended to prevent readmission, prescription notifications, and home healthcare instructions." *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2015 Declaratory Ruling, 30 FCC

Rcd. 7961, 8030 ¶ 146 (July 10, 2015).  The FCC declined to extend the exemption to calls related to "telemarketing, solicitation, or advertising content, or which include accounting, billing, debt-collection, or other financial content."  *Id.*

The FCC created seven conditions that must be satisfied for the healthcare-related calls exemption to apply in an apparent attempt to limit the disruption to consumers caused by such calls.  *Id.* ¶ 147.  The FCC did not, however, analyze whether these same requirements would further the purported government interest in reducing the intrusiveness of other types of informational calls.  *Id.*  Courts therefore correctly determine that the TCPA is subject to strict scrutiny but understate the extent to which it discriminates based on content.

    2.    **The TCPA Discriminates In Favor of Government Speakers And Government Authorized Messages.**

The TCPA's call restrictions are also subject to strict scrutiny for the independent reason that they impose speaker-based preferences for government messages over private messages.  The TCPA's call restrictions apply to "any person within the United States," but the statute excludes government entities from the definition of "person."  47 U.S.C. § 227(b)(1); 47 U.S.C. § 153(39) (defining "person" as "including an individual, partnership, association, joint-stock company, trust or corporation"); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No., 02-278, Declaratory Ruling, FCC 16-72, ¶ 10 (July 5, 2016) (acknowledging that the term "person" as used in Section 227(b)(1) "does not include the federal government or [its] agents acting within the scope of their agency").

The preference for governmental entities and their agents "reflects a content preference" for favored content—messages related to government-backed debt and other government-authorized messages—over all other speech.  Thus, because a private speaker's liability turns on whether its message is authorized by the government, the TCPA's speaker-based preference

reflects a content preference for government messages and government authorized messages, independently triggering strict scrutiny.  *Reed*, 135 S. Ct. at 2230.

### 3.      The TCPA Fails Strict Scrutiny.

Under the First Amendment, the government "has no power to restrict expression because of its message[s], its ideas, its subject matter, or its content."  *Police Dep't. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).  Thus, the Supreme Court held in *Town of Gilbert* that "[c]ontent-based laws—those that target speech based on its communicative content—are *presumptively unconstitutional* and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." 135 S. Ct. at 2226 (emphasis added).  Further, "the differentiation between [content] . . . [must] further[] a compelling governmental interest and [be] narrowly tailored to that end." *Id.* at 2231.  In other words, laws that regulate speech-based content violate the First Amendment unless they can pass an exacting form of strict scrutiny.  *Id.*

### a.      The Government Does Not Have A Compelling Interest For The Call Restrictions.

To determine if a content-based restriction withstands strict scrutiny, the reviewing court "must identify with care the interests the State itself asserts" in maintaining the speech restriction, and may not "supplant the precise interests put forward by the State with other suppositions." *Edenfield v. Fane*, 507 U.S. 761, 768 (1993).  The burden is on the party defending a content-based restriction to advance record evidence that the harms Congress identified are real. *Id.*; *Consol. Edison of N.Y., Inc. v. Pub. Serv. Comm'n,* 447 U.S. 530, 543 (1980) ("Mere speculation of harm does not constitute a compelling state interest."); *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 644 (1994) (similar).  The party defending a content-based restriction must also advance evidence that the content-based distinctions serve the asserted interest.  *See Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 424 (1993) (striking down city ordinance because "the [content-

based] distinction bears no relationship whatsoever to the particular interests that the city has asserted.").

Plaintiffs in TCPA cases typically argue that the government has an interest in protecting the "privacy" of cell phone users to justify the TCPA's onerous restrictions.  Congress, however, enacted the TCPA to target a particular problem: telemarketing robocalls that used specialized machines dialing random or sequential phone numbers, or that used prerecorded/artificial messages. Pub. L. No. 102-243, § 2, ¶¶ 1, 12, 105 Stat. 2394, 2394-95 (1991).   Congress's prohibition on the use of ATDSs targeted harmful telemarketing practices that emerged in the 1980s.  During that time, "telemarketers typically used autodialing equipment that either called numbers in large sequential blocks or dialed random 10-digit strings." *Dominguez v. Yahoo, Inc.*, 629 Fed. App'x. 369, 372 (3d Cir. 2015).  Random dialing allowed callers to reach and tie up unlisted and specialized numbers.  *See* S. Rep. No. 102-178, at 2 (1991).  And sequential dialing allowed callers to reach all numbers in an area, creating a "potentially dangerous" situation in which no outbound calls (including emergency calls) could be placed.  H.R. Rep. No. 102-137, at 10 (1991).  The actual governmental interest was therefore to stop one very specific type of telemarketing practice—dialing randomly and sequentially generated numbers—not to protect a vague and undefined privacy interest.

In any event, as the Eighth Circuit observed, "[t]he Supreme Court has never held that [residential privacy] is a compelling interest … and we do not think that it is." *Kirkeby v. Furness*, 92 F.3d 655, 659 (8th Cir. 1996) (citing *Frisby v. Schultz*, 487 U.S. 474 (1988) and *Carey v. Brown*, 447 U.S. 455 (1980)).   Indeed, it would be dangerous precedent to allow the government – in the name of privacy – to restrict that which it considers to be "unwelcome" speech.  *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 210 (1975) (government ordinarily lacks the power "to decide

which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener").

        **b.**        **The TCPA Is Not Narrowly Tailored To Its Objectives.**

Even if the government arguably had some compelling interest supporting the TCPA's content-based prohibitions, the prohibitions are not narrowly tailored to further such an interest. *See Reed*, 135 S. Ct. at 2330-31. Narrow tailoring requires targeting "no more than the exact source of the 'evil' [the regulation] seeks to remedy." *Frisby*, 487 U.S. at 485. Thus, to survive narrow tailoring analysis, the government may not restrict constitutionally protected speech unless "it chooses the least restrictive means to further the articulated interest." *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989).

A statute's under-inclusiveness is an often-fatal defect when strict scrutiny applies because it "raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint," and frequently reveals that the law does not actually advance a compelling interest. *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 802 (2011). Nor can the restriction be over-inclusive, meaning that it cannot "unnecessarily circumscribe protected expression." *Republican Party v. White*, 536 U.S. 765, 775 (2002).

The statute is under-inclusive in that it excludes calls to collect debt issued or guaranteed by the federal government. The text and legislative findings on the TCPA contain no evidence that consumers have a privacy interest in calls to collect private debt but not calls to collect government issued or backed debt. Indeed, the effect on consumers is the same: they receive a call they claim is unwelcome and unconsented-to. The differential treatment is therefore nothing more than bare discrimination based on the content of speech, which cannot survive strict scrutiny. *See Entm't Merchs.*, 546 U.S. at 802 (holding that the fact that a restriction on speech is "wildly underinclusive . . . is alone enough to defeat it."). As the Fourth Circuit held, "[b]ecause of the expansive reach

of the debt-collection exemption, it is woefully underinclusive and does not serve the compelling government interest of protecting privacy in a narrow fashion." *Am. Ass'n of Political Consultants*, 2019 U.S. App. LEXIS 12127 at *19.

The TCPA is also fatally over-inclusive. Specifically, the statute broadly restricts private uses of automated telephone dialing systems to disseminate commercial messages to consumers, such as promotional offers and bill payment reminders, while exempting government-backed debt collection calls. Indeed, there are a multitude of less restrictive alternatives that would allow the government to limit the alleged intrusiveness, while at the same time achieving any purported privacy interest. *See Cahaly v. Larosa*, 769 F.3d 399, 405-06 (4th Cir. 2015) (invalidating state law analog to the TCPA and enumerating less restrictive alternatives, including do-not-call lists, time-of-day limitations, and mandatory disclosure of the caller's identity); *see also Gresham v. Rutledge*, 198 F. Supp. 3d 965, 972 (E.D. Ark. 2016) (invalidating Arkansas state law analog to the TCPA and enumerating less restrictive alternatives, including time-of-day restrictions, disconnection requirements, and prohibiting calls to emergency lines).

In addition, this Court can avoid over-inclusiveness by interpreting the TCPA as written. As the legislative history makes clear, the TCPA was enacted to address one specific type of telemarking practice – calls made with "autodialing equipment that either called numbers in large sequential blocks or dialed random 10-digit strings." *Dominguez*, 629 Fed. App'x. at 372. Thus, interpreting the definition of ATDS as requiring random or sequential number generation avoids overbreadth and narrowly tailors the statute to address the Congressional purpose.

### 4. Alternatively, The TCPA Is Not Narrowly Tailored Because It Treats Healthcare-Related Calls More Favorably Than Other Informational Calls.

Even if the government had *some* privacy interest in regulating calls, it cannot justify treating them less favorably than healthcare-related calls. As discussed above, the FCC created a

set of seven specific requirements that unconsented-to healthcare-related calls must meet to avoid liability, but did not extend the same exemption to servicing and collection calls. *See* 30 FCC Rcd. at 8030 ¶¶ 146-47. To survive strict scrutiny, however, the differential treatment between healthcare-related calls and collection and servicing calls must be narrowly tailored. This content-based discrimination fails that test. *See Town of Gilbert*, 135 S. Ct. at 2231.

The intrusiveness of both categories of calls is the same—consumers receive a call on their cell phone that they did not consent to receive. The purpose of the calls is also the same—to convey important information to the consumer. Because the intrusiveness and the purpose are the same for both types of calls, the same rules designed to minimize the intrusiveness of healthcare-related calls while permitting the conveyance of important information must be applied equally to servicing and collection calls rather than the blanket prohibition currently in force. The differential treatment between the two categories of calls is therefore not "narrowly tailored" and, as a result, fails strict scrutiny.

**C.    The TCPA Violates The Equal Protection Clause.**

The Supreme Court has long recognized that equal protection "is closely intertwined with First Amendment interests." *Police Dep't of City of Chicago v. Mosely*, 408 U.S. 92, 95 (1972). "The Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives." *Id.* at 101. Here, Plaintiff cannot demonstrate that the TCPA's differential treatment of various types of speech—both based on content and its speaker—passes equal protection. For the reasons set forth in Section II.B above, the restrictions are not narrowly tailored to their intended interests. No conceivable public interest justifies treating speech regarding things such as economics, politics or religion less favorably than speech regarding collection of government-backed debt. Accordingly, the TCPA fails equal protection.

D.      **The TCPA Is Unconstitutionally Vague.**

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The Constitution requires that statutes be set forth with "sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). This definiteness is required to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108. Moreover, exacting precision is required for restrictions on free speech in order to avoid the risk of otherwise chilling constitutionally protected speech. *See NAACP v. Button*, 371 U.S. 415, 432-33 (1963) ("standards of permissible statutory vagueness are strict in the area of free expression. . . . Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity."); *Reno v. American Civil Liberties Union*, 521 U.S. 844, 871-72 (1997); *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964).

Even in a facial vagueness challenge, a statute need not be vague in all applications to be void if it reaches a "substantial amount of constitutionally protected conduct." *Kolender*, 461 U.S. at 359, n. 8 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1992)). The need for clear guidance is heightened when affecting constitutionally protected rights as opposed to mere economic behavior. *Village of Hoffman Estates*, 455 U.S. at 498; *see also Accounting Outsourcing, LLC v. Verizon Wireless Personal Commc'ns, L.P.*, 329 F. Supp. 2d 789, 805 (M.D. La. 2004) ("[B]ecause the TCPA regulates constitutionally protected commercial speech, it must satisfy a more rigid vagueness test, such that even one impermissible application would render the TCPA vague.").[1]

_____

[1] In *Accounting Outsourcing*, LLC, the Middle District of Louisiana rejected constitutional challenges to the TCPA. The rationale in *Accounting Outsourcing*, however has no application because the court was considering fax-related

The ATDS restrictions imposed by the TCPA are unconstitutionally vague because they fail to give a person of ordinary intelligence adequate notice of what constitutes an ATDS. The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). As written, the statute covers only dialers that call randomly or sequentially, and some courts have so held. *Dominguez v. Yahoo, Inc.*, 894 F. 3d 116, 121 (3d Cir. 2018). Problematically, however, other courts have adopted different functionalities, some—such as *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018) and *Gonzales v. Hosopo Corporation*, 2019 WL 1533295 (D. Mass. Apr. 9, 2019)—by re-writing the statute to cover all dialers that call "automatically" (another undefined term) from "stored" numbers by grafting the FCC's vague rulings from 2003 onto the statutory language.[2]

Not only do courts not agree on what an ATDS must do—and thus callers cannot determine what functionalities their dialers must avoid—but the contours of the necessary "capacity" to perform those functions is not defined in the statute. In 2015, the FCC drastically broadened the definition of an ATDS to include not only equipment that has the "present ability" to dial automatically, but also the "potential" or "future capacity" to do so. FCC Order, 30 FCC Rcd. at 7971-72, 7974-76, 8089 ¶¶ 10, 16, 19.

In March 2018, however, the D.C. Circuit set aside the FCC's broad ATDS interpretation. *ACA International*, 885 F.3d at 700-01. The D.C. Circuit concluded that the FCC's ATDS interpretation was an "unreasonably expansive interpretation of the statute" and criticized the

---

restrictions that are not at issue here. Further, the court did not consider the equal protection challenge.

[2] And here matters are doubly confusing as courts cannot agree on whether these earlier FCC rulings survived the D.C. Circuit Court of Appeals ruling in *ACA International v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).

FCC's 2015 Order for failing to provide meaningful, reasoned guidance as to the meaning of "using a random or sequential number generator." *Id.* at 701. The Court also noted that the FCC had failed to clarify "whether a device must itself have the ability to generate random or sequential telephone numbers to be dialed" or whether it is "enough if the device can call from a database of telephone numbers generated elsewhere[.]" *Id.*

The uncertainty outlined in *ACA International* has been compounded by the Ninth Circuit's decision in *Marks*, 904 F.3d at 1052 in which the court re-wrote the definition of an ATDS to include every dialer that has the capacity to call from a list of numbers "automatically."[3] *Id.* at 1052. The term "automatically" is vague and undefined, as is the term "capacity." In contrast, the Third Circuit has held that an ATDS must have "the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers." *Dominguez*, 894 F. 3d at 121. Additionally, as already noted above, district courts outside of the Third and Ninth Circuits have reached inconsistent rulings on what constitutes an ATDS. *Compare Gonzales v. Hosopo Corporation*, 2019 WL 1533295 (D. Mass. Apr. 9, 2019) (adopting the *Marks* ATDS formulation) and *Adams v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 184513 (S.D. Fla. Oct. 29, 2018) (same) *with Gadelhak v. AT&T Servs.*, 2019 U.S. Dist. LEXIS 55200 (N.D. Ill. Mar. 29, 2019) (rejecting the *Marks* ATDS formulation) and *Thompson-Harbach v. Usaa Fed. Sav. Bank*, 2019 U.S. Dist. LEXIS 3687 (N.D. Iowa Jan. 9, 2019) (same).

As a result, loanDepot cannot readily determine what type of dialing technology constitutes an ATDS under the statute and therefore what type of conduct is prohibited. Accordingly, the TCPA is unconstitutionally vague and risks chilling lawful attempts of businesses to contact

---

[3] In response to *Marks*, the FCC reopened the comment period to allow for further comment on the meaning of ATDS. *Consumer and Government Affairs Bureau Seeks Further Comment on Interpretation of the Telephone Consumer Protection Act in Light of the Ninth Circuit's Marks v. Crunch San Diego, LLC Decision*, CG Docket No. 18-152, CG Docket No. 02-278, DA 18-1014 (Oct. 3, 2018).

consumers legitimately.

**E.**     **The TCPA Must Be Struck Down In Its Entirety.**

If this Court finds the TCPA unconstitutional, as it should, it must strike down the TCPA in its entirety. Although the Fourth Circuit correctly found that the government-backed debt exemption renders the TCPA unconstitutional, it incorrectly determined that it could sever the offending provision rather than invalidate the entire TCPA. *Am. Ass'n of Political Consultants*, 2019 U.S. App. LEXIS 12127 at *28-31. That decision cannot be squared with long-standing First Amendment law.

First Amendment free speech cases are different from cases involving other constitutional challenges. For example, to support the severance remedy in *American Association of Political Consultants,* the Fourth Circuit relied on the Supreme Court's decision in *NFIB v. Sebelius,* 567 U.S. 519, 587 (2012), in which the Court severed an unconstitutional provision from the Affordable Care Act. *NFIB* had nothing to do with First Amendment free speech. In First Amendment free speech cases, courts will not sever a statute if "[e]liminating the offending exception would mean that we would be requiring the State to restrict *more* speech than it currently does." *Rappa v. New Castle Cnty.*, 18 F.3d 1043, 1072-73 (3d Cir. 1994) (emphasis in original). Otherwise, a court would be restricting speech that Congress plainly intended to permit.

Indeed, in several cases where the Supreme Court has found content-based exemptions to be unconstitutional, it remedied the violation by invalidating the entire ordinance or statute, not severing the exemption that renders it content based. *See, e.g., Mosley*, 408 U.S. at 102 (invalidating ordinance prohibiting picketing outside schools, not just exemption for labor picketing); *Carey*, 447 U.S. at 471 (same with respect to picketing outside residences); *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 234 (1987) (invalidating application of a state's general sales tax to magazines, not just the content-based tax exemptions for religious, trade,

professional, and sports magazines).

Even if a statute has a general severance provision (which the TCPA has), and even if the statute could function independently without the offending exemption, severability has a constitutional dimension that cannot be ignored. *Rappa*, 18 F.3d at 1072-73. "In *Mosley*, without even commenting on the possibility of eliminating the exception for peaceful labor picketing, the Supreme Court struck down a statute banning picketing near a school rather than striking down the exception." *Id.* at 1073. The *Rappa* court likewise refused to "strike down the exception in part because of the special status of speech in our constitutional scheme, a scheme which generally favors more speech." *Id.* In addition, the Third Circuit found that "if courts were to sever exceptions from content discriminatory statutes, individuals would lose much of their incentive to challenge such statutes, because those whose speech is banned would often not benefit from the remedy." *Id.* *See also Lucia v. SEC*, 138 S. Ct. 2044, 2055 n.5 (2018). Thus, recognizing the special status of speech in the constitutional framework and the importance of incentivizing parties like LoanDepot to challenge unconstitutional statutes, the entire TCPA must be struck down.

Finally, because the definition of ATDS is unconstitutionally vague, severance is not an option. "Congress could not have intended a constitutionally flawed provision to be severed from the remainder of the statute if the balance of the legislation is incapable of functioning independently." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987) (citing *Hill v. Wallace*, 259 U.S. 44, 70-72 (1922) (Future Trading Act held nonseverable because valid and invalid provisions so intertwined that the Court would have to rewrite the law to allow it to stand)); *Georgia Ass'n of Educators v. Harris*, 749 F. Supp. 1110, 1117-18 (N.D. Ga. 1990) (denying severanve because offending section was "inextricably woven into the whole [statute].").

**F.    Plaintiff's Complaint Fails To State A Plausible Claim for Relief**

Even if the TCPA is constitutional, which it is not, Plaintiff's Complaint must still be

dismissed for failure to state a claim that is plausible on its face.

### 1.     Plaintiff Has Not Plausibly Alleged Use Of An ATDS.

To prevail on Count One, Plaintiff must plead and prove that loanDepot called him via an ATDS. *See Jones v. FMA Alliance, Ltd.*, 978 F. Supp. 2d 84, 86-87 (D. Mass. 2013) (dismissing a TCPA claim for failure to plead use of an ATDS). As described in loanDepot's Motion to Stay based on primary jurisdiction, courts are currently split on the definition of an ATDS. Even under the more liberal *Marks* and *Gonzales* standard, however, Plaintiff has failed to allege plausibly that either loanDepot or the John Doe Corporation placed calls to him via an ATDS.

The Complaint does not contain any allegations regarding the functionalities of the dialing systems allegedly used by loanDepot and the Jon Doe Corporation. Plaintiff's sole allegations regarding use of an ATDS is: "The fact that the call was made from a non-working number is indicative of the fact that the call was made with an ATDS, as a computer automated dialer would be needed to manipulate a Caller ID." (Compl. ¶ 41.) But that allegation says nothing about the actual functionality or capabilities of the dialing system. Accordingly, the Complaint fails to allege plausibly that either loanDepot or the John Doe Corporation called Plaintiff via an ATDS, and Count One of Plaintiff's Complaint should be dismissed. *See See Jones v. FMA Alliance, Ltd.*, 978 F. Supp. 2d 84, 86-87 (D. Mass. 2013) (dismissing a TCPA claim for failure to plead use of an ATDS); *Trumper v. GE Capital Retail Bank*, 79 F. Supp. 3d 511, 513 (D.N.J. 2012) (dismissing plaintiff's TCPA claim for failing to allege any facts that would support an inference that an ATDS was used); *Trenk v. Bank of Am.*, C2017 U.S. Dist. LEXIS 143410, at *7 (D.N.J. Sep. 18, 2017) ("The Court need not take Plaintiff's conclusory assertion that Defendant used autodialing as true …."); *Douek v. Bank of Am. Corp.*, 2017 U.S. Dist. LEXIS 141785, at *4-5 (D.N.J. Aug. 28, 2017) (granting dismissal where "[t]he Complaint merely alleges that the 73 calls and 375 text messages that Plaintiff received over an approximately 15 month period were 'auto-dialed' (Compl. ¶ 10),

16

but offers no facts to support this allegation"); *Curry v. Synchrony Bank, N.A.*, 2015 U.S. Dist. LEXIS 153131 (S.D. Miss. Nov. 12, 2015) (Collecting cases and holding that "[t]he majority of courts to have considered the issue, though, have found that a plaintiff's bare allegation that a defendant used an ATDS is not enough."); *Baranski v. NCO Fin. Sys., Inc.*, 2014 U.S. Dist. LEXIS 37880, at *16 (E.D.N.Y. Mar. 21, 2014) (noting that "the vast majority of courts to have considered the issue have found that '[a] bare allegation that defendants used an ATDS is not enough.'"); *Johansen v. Vivant, Inc.*, No. 12-7159, 2012 U.S. Dist. LEXIS 178558 (N.D. Ill. Dec. 18, 2012).

    **2.**    **Count Two Must Be Dismissed Because Plaintiff Has Not Alleged That His Cellular Phone Number Is A Residential Line.**

Count Two of Plaintiff's Complaint alleges that loanDepot violated the DNC provisions of 47 C.F.R. § 64.1200(d). That provision, however, only applies to calls to "residential" telephone numbers, as distinct from business lines. *See id.* ("No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber . . . ."); *Cunningham v. Rapid Response Monitoring Servs.,* 251 F. Supp. 3d 1187, 1201 (M.D. Tenn. 2017). As the *Cunningham* court explained, "[i]t may be that, in some cases, an individual who relies on a cellular phone may nevertheless fall within the definition of a 'residential telephone subscriber' under the Act," but if a complaint merely alleges calls to a cell phone, it fails to plausibly state a claim for relief under § 64.1200(d).    251 F. Supp. 3d at 1201.

Plaintiff merely alleges that his "sole telephone number . . . is assigned to a cellular telephone service." (Compl. ¶ 35.) He does not include any allegations showing that his number is a residential telephone number. Accordingly, Count Two must be dismissed for failure to state a claim on which relief can be granted. *See Cunningham*, 251 F. Supp. 3d at 1201; *Shelton v. Target Advance LLC*, CIVIL ACTION NO. 18-2070, 2019 U.S. Dist. LEXIS 64713, at *15-16 (E.D. Pa April 16, 2019) (holding that a cell phone that is used for business purposes is not a residential

telephone number).

> **3.** **Plaintiff's Claims Related To Failure of the John Doe Corporation to Identify Itself Fail Because 47 C.F.R. § 64.1200(d)(4) Does Not Have A Private Right of Action.**

Plaintiff claims that the John Doe Corporation violated 47 C.F.R. §64.1200(d)(4) provides that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." That section was enacted pursuant to 47 U.S.C. § 227(d), which provides:

> The Commission shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone. Such standards shall require that—
>
> (A) all artificial or prerecorded telephone messages (i) shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and (ii) shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual.

*See Burdge v. Ass'n Health Care Mgmt.*, 2011 U.S. Dist. LEXIS 9879, at *8-10 (S.D. Ohio Feb. 2, 2011) (holding that § 64.1200(d)(4) was enacted pursuant to 47 U.S.C. § 227(d)).

Section 227(d), unlike other portions of the TCPA, does not include a private right of action. *Id.* And because section 64.1200(d)(4) was adopted pursuant to it, rather than section 227(b), section 64.1200(d)(4) does not have a private right of action either, and can only be enforced by the government. *Id.*; *Worsham v. Travel Options, Inc.*, 2016 U.S. Dist. LEXIS 1187774, at *18-19 (D. Md. Sep. 1, 2016) ("the Court concludes Worsham does not possess a private right of action as to an alleged violation of 47 C.F.R. § 64.1200(d)(4)."). Plaintiff's claims in Count Two for failure of the John Doe Corporation to identify itself must therefore be dismissed because section 64.1200(d)(4) does not have a private right of action.

**4.     Plaintiff's Allegations Regarding Vicarious Liability Are Too Conclusory To State A Plausible Claim For Relief.**

Although Plaintiff alleges that loanDepot made a few calls to him, the bulk of Plaintiff's Complaint relates to alleged calls placed by the John Doe Corporation. Plaintiff argues that loanDepot is vicariously liable for the calls placed by the John Doe Corporation. (Compl. ¶¶ 51-62.) To prevail on a vicarious liability claim under the TCPA, Plaintiff must plausibly allege either that the loanDepot specifically authorized the calls at issue or that the John Doe Corporation made the calls as an agent of loanDepot. *See In re Dish Network*, 28 FCC Rec'd 6574, ¶ 1, 2013 FCC LEXIS 2057 (2013).

Plaintiff's vicarious liability allegations, however, are either statements of law (*Id.* ¶¶ 51-55, 62.) And as the Northern District of California recently held, a plaintiff cannot rely on conclusory allegations of control and authority to state a claim for vicarious liability under the TCPA. *See Canary v. Youngevity Int'l, Inc.*, 2019 U.S. Dist. LEXIS 46429, at *14-18 (N.D. Cal. March 20, 2019). In fact, courts have dismissed vicarious liability claims that rely on the same allegations Plaintiff makes here.

Plaintiff, for example, alleges that loanDepot "engag[ed] John Doe Corporation to make calls on behalf of its agents to generate new business." (Compl. ¶ 57.) The *Canary* court, however, held that similar allegations were "too general and conclusory to plead" that the defendant authorized the specific calls at issue. *Canary*, 2019 U.S. Dist. LEXIS 46429, at *15-16. Plaintiff also alleges that loanDepot "maintained interim control over John Doe Corporation's actions" and that it "had day-to-day control over John Doe Corporation's actions, including the ability to prohibit it from using an ATDS to contact potential customers." (Compl. ¶¶ 58-60.) Plaintiff then alleges that loanDepot "gave interim instructions to John Doe Corporation by providing the volume of calling and leads it would purchase." (*Id.* ¶ 61.) Multiple courts have held that far more

detailed allegations and control failed to state a claim for vicarious liability under the TCPA. *See Kristensen v. Credit Payment Servs.,* 879 F.3d 1010, 1015 (9th Cir. 2018) ("Although AC Referral was an agent of Click Media, Kristensen presented no evidence that Click Media had actual knowledge that AC Referral was sending text messages in violation of TCPA."). *Jones v. Royal Admin Servs.,* 887 F.3d 443, 450 (9th Cir. 2018); *Naiman v. TranzVia, LLC,* 2017 U.S. Dist. LEXIS 199131 (N.D. Cal. Dec. 4, 2017); *Strauss v. CBE Group, Inc.,* 173 F. Supp. 3d 1302, 1309-10 (S.D. Fla. 2016).

## <u>CONCLUSION</u>

The TCPA is an unconstitutional, content-based restriction on speech that cannot survive strict scrutiny.  Furthermore, the TCPA fails equal protection and is unconstitutionally vague. Because Plaintiff's sole claims for relief are for alleged TCPA violations, the Complaint must be dismissed.

Dated: May 31, 2019

Respectfully submitted,
DEFENDANT
LOANDEPOT.COM, LLC
By its attorneys,

*/s/ Paul R. Mastrocola*
Paul R. Mastrocola (BBO #630664)
pmastrocola@burnslev.com
Kelly Kirby (BBO #687944)
kkirby@burnslev.com
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
(617) 345-3000
(617) 345-3299 (fax)

Daniel Delnero, Esq., (p*ro hac vice pending)*
daniel.delnero@squirepb.com
Squire Patton Boggs LLP
1230 Peachtree Street, NE
Suite 1700
Atlanta, GA 30309
(678) 272-3200
(678) 272-3211 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 31, 2019.

*/s/ Paul R. Mastrocola*
Paul R. Mastrocola

4815-3699-7784.1