# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

DOUGLAS E. ROSENBERG on behalf of himself and others similarly situated,

    Plaintiff,

v.

LOANDEPOT.COM LLC and ASCEND MARKETING, LLC,

    Defendants.

Case No. 1:19-cv-10661-NMG

## FIRST AMENDED CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Douglas E. Rosenberg ("Plaintiff" or "Mr. Rosenberg") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, LoanDepot.com LLC ("LoanDepot.com") hired the co-defendant, Ascend Marketing, LLC ("Ascend Marketing"), who made automated telemarketing calls to a cellular telephone number of Mr. Rosenberg for the purposes of advertising LoanDepot.com goods and services using an automated dialing system, which is prohibited by the TCPA.

3. Ascend Marketing made these calls because of an agreement with LoanDepot.com, who hired Ascend Marketing to generate business through telemarketing and maintained interim control over their actions.

4. The calls to Mr. Rosenberg also violated the TCPA because LoanDepot.com (a) failed to have procedures to maintain an internal do not call list (b) failed to tender their Do Not Call Policy to the Plaintiff and (c) the Defendant's agent, Ascend Marketing, failed to properly identify themselves in two of the automated voice calls to the Plaintiff.

5. The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

6. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

7. Plaintiff Douglas E. Rosenberg is a resident of the Commonwealth of Massachusetts and of Bristol county.

8. Defendant LoanDepot.com LLC is a foreign limited liability company that maintains its principal place of business in Foothill Ranch, CA. LoanDepot.com has a registered agent of Registered Agent Solutions, Inc. 44 School Street. Suite 325. Boston, MA 02108.

9. Defendant Ascend Marketing, LLC is a foreign limited liability company that maintains its principal place of business in Grapevine, TX with a registered agent of Capital Corporate Services, 206 E 9th St #1300, Austin, TX 78701. Ascend Marketing regularly conducts business in this District, including through the making of telemarketing calls, as it did with the Plaintiff.

**Jurisdiction & Venue**

10.     The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls at issue that gave rise to the Plaintiff's claims were made into this District.

**The Telephone Consumer Protection Act**

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The National Do Not Call Registry</u>

13.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

14.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

15.     In addition to prohibiting the initiation of telephone solicitations to residential telephone subscribers to the Registry, the TCPA and implementing regulations prohibit any company from initiating any telemarketing calls unless the company has implemented internal

procedures for maintaining a list of persons who request not to be called by the entity. 47 C.F.R. 64.1200(d). Such internal procedures must meet certain minimum requirements to allow the entity to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

16. This includes the requirement that, "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *See* 47 C.F.R. 64.1200(d)(4).

17. This also includes the requirement that "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list." *See* 47 C.F.R. 64.1200(d)(1).

18. A requirement also exists that "a person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made." *See* 47 C.F.R. 64.1200(d)(6).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

19. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

20. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls

4

are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

21. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

22. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

23. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

24. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer

Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).

25. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

26. *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

27. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

**Factual Allegations**

28. LoanDepot.com offers credit solutions to generate new customers.

29. To generate placements, LoanDepot.com relies on telemarketing.

30. However, LoanDepot.com's contact with the potential new customers is limited, and the telemarketing is conducted by third parties.

6

31. One of LoanDepot.com's strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business by third parties.

32. LoanDepot.com engages third parties for the use of this equipment because it allows for thousands of automated calls to be placed at one time, and saves LoanDepot.com money because its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

33. Through this method, LoanDepot.com shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Calls to Mr. Rosenberg

34. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

35. Mr. Rosenberg's sole telephone number, (508) 965-XXXX, is assigned to a cellular telephone service.

36. Mr. Rosenberg's sole telephone number, (508) 965-XXXX, is used for residential purposes.

37. Mr. Rosenberg placed his number on the Massachusetts Do Not Call List on April 1, 2003.

38. Mr. Rosenberg placed his cellular telephone number on the National Do Not Call Registry on August 16, 2003.

39. Despite Mr. Rosenberg taking the affirmative step of registering his telephone number on the National Do Not Call Registry, Ascend Marketing placed an automated telemarketing call to him on November 19, 2018.

40. The call was made from the Caller ID (508) 409-6883.

41. That is a non-working number.

42. The fact that the call was made from a non-working number is indicative of the fact that the call was made with an ATDS, as a computer automated dialer would be needed to manipulate a Caller ID.

43. Furthermore, Ascend Marketing does not have a Massachusetts location, yet they called from a Massachusetts area code.

44. Other individuals have complained about receiving solicitation calls from the same number that called the Plaintiff:

> Telemarketer
> another mass telemarketer…
>
> Unsolicited call
> no permission to call…
>
> mortgage (Scam call)

*See* https://www.shouldianswer.com/phone-number/5084096883 (Last Visited March 19, 2019)

45. The foregoing are also indicative of the fact that the call was made with an ATDS.

46. Confirming their identity, Loan Depot contacted the Plaintiff directly on November 19, 2018 and November 28, 2018.

47. During the November 19, 2018 call, the Plaintiff was able to affirmatively identify Loan Depot as the calling party.

48. During the November 28, 2018 call, the Plaintiff indicated he no longer wanted to be contacted.

49. Despite that fact, the Plaintiff got another call from Ascend Marketing calling from the Caller ID (508) 409-6883 on January 21, 2019.

50. As the Plaintiff had already asked Loan Depot to stop calling, he again attempted to confirm the identity of the calling party.

51. Confirming their identity, Loan Depot contacted the Plaintiff offering their goods or services in a series of follow up calls.

52. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

53. Moreover, these calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

### LoanDepot.com's Liability and its Arrangement with Ascend Marketing

54. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

55. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

56. In that ruling, the FCC instructed that sellers such as LoanDepot.com may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

9

without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

57. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

58. By engaging Ascend Marketing to make calls on behalf of its agents to generate new business, LoanDepot.com "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

59. The Plaintiff also previously complained to LoanDepot.com about the conduct of Ascend Marketing, yet LoanDepot.com continued their relationship with Ascend Marketing.

60. Moreover, LoanDepot.com has previously been sued for alleged violations of the TCPA.

61. LoanDepot.com also maintained interim control over Ascend Marketing's actions.

62. For example, LoanDepot.com had absolute control over whether, and under what circumstances, it would accept a customer.

63. Furthermore, LoanDepot.com had day-to-day control over Ascend Marketing's actions, including the ability to prohibit it from using an ATDS to contact potential customers of LoanDepot.com. LoanDepot.com failed to make such an instruction to Ascend Marketing, and as a result, is liable for Ascend Marketing's conduct.

64. LoanDepot.com also gave interim instructions to Ascend Marketing by providing the volume of calling and leads it would purchase.

65. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

66. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

67. The classes of persons Plaintiff proposes to represent are tentatively defined as:

CLASS 1

All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Defendants' products or services; (c) to their cellular telephone number; (d) using substantially the same telephone dialing system used to call Plaintiff, or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

CLASS 2

All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more calls in a twelve-month period; (b) promoting Defendants' products or services; (c) to their residential telephone number; (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

68. The classes as defined above are identifiable through phone records and phone number databases.

69. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

70. Plaintiff is a member of the proposed classes.

71. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    a. Whether Defendants violated the TCPA by using automated telemarketing to call cellular telephones;

    b. Whether Defendants violated the TCPA by failing to implement policies and procedures for maintaining a list of persons who request not to be called by Defendants;

    c. Whether Defendants placed calls using an automatic telephone dialing system;

    d. Whether LoanDepot.com is vicariously liable for the conduct of Ascend Marketing;

   e.  Whether Defendants placed calls without obtaining the recipients' prior consent for the call; and

   f.  Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

  72. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Classes arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

  73. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

  74. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

  75. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

  76. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

77. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Causes of Action

### Count One:
### Violation of the TCPA's Automated Calling provisions
### (On behalf of Plaintiff and Class 1)

78. Plaintiff incorporates the allegations from paragraphs 1 through 77 as if fully set forth herein.

79. The foregoing acts and omissions of the Defendants constitute violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of Class 1 using an ATDS and/or artificial or prerecorded voice.

80. As a result of the Defendants' violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of Class 1 presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute. The Court may award up to $1,500 if the violation was found to be "knowing or willful."

81. Plaintiff and members of Class 1 are also entitled to and do seek injunctive relief prohibiting Defendants from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

**Count Two:**
**Violation of the TCPA's DNC provisions**
**(On behalf of Plaintiff and Class 2)**

82. Plaintiff incorporates the allegations from paragraphs 1 through 77 as if fully set forth herein.

83. The foregoing acts and omissions of the Defendants constitute violations of the FCC's regulation implementing subsection 227(c) of the TCPA which prohibit anyone from making any call for telemarketing purposes to any residential or wireless telephone subscriber unless the caller has implemented the required minimum procedures for maintaining a list of persons who do want to receive calls made by or on behalf of such person or entity. 47 C.F.R. 64.1200(d).

84. This includes the requirement that, "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." *See* 47 C.F.R. 64.1200(d)(4).

85. Ascend Marketing failed to properly identify themselves in their automated voice calls to the Plaintiff.

86. This also includes the requirement that "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list." *See* 47 C.F.R. 64.1200(d)(1).

87. The Plaintiff, through his attorney, requested a copy of Loan Depot's Do Not Call Policy, yet Loan Depot refused to produce it.

88. A requirement also exists that "a person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing

calls. A do-not-call request must be honored for 5 years from the time the request is made." *See* 47 C.F.R. 64.1200(d)(6).

89. Despite the fact that the Plaintiff asked Loan Depot to no longer call him, he received further automated calls from Ascend Marketing and then from Loan Depot directly.

90. The Defendants' violations were negligent, willful, and/or knowing.

91. Under the TCPA, the Plaintiff is entitled to injunctive relief. The Plaintiff seeks injunctive relief prohibiting Defendants from making telemarketing calls until it establishes adequate procedures in place to ensure they are identified on each telemarketing call made.

92. In addition, Plaintiff seeks damages of $500.00 for each such violation. *See* 47 U.S.C. § 227(c)(5).

93. Plaintiff requests the Court to exercise its discretion and treble such damages for each willful or knowing violation.

**Relief Sought**

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendants' actions complained of herein violate the TCPA;

E. An order enjoining Defendants from making automated or pre-recorded calls;

F. An award to Plaintiff and the Classes of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

          PLAINTIFF,
          By his attorneys

          */s/ Anthony I. Paronich*
          Anthony I. Paronich
          Paronich Law, P.C.
          350 Lincoln Street, Suite 2400
          Hingham, MA 02043
          Telephone: (508) 221-1510
          anthony@paronichlaw.com

          Alex M. Washkowitz
          Jeremy Cohen
          CW Law Group, P.C.
          188 Oaks Road
          Framingham, MA 01701
          alex@cwlawgrouppc.com

## CERTIFICATE OF SERVICE

I, hereby certify that on June 10, 2019, I filed the foregoing with the Court's CM/ECF system, which served the same on the counsel of record.

          */s/ Anthony Paronich*
          Anthony Paronich